# EXHIBIT "A"

LOAN #: [redacted]
MIN: [redacted]

# NOTE

| | | |
|---|---|---|
| **April 6, 2023** | **Mount Laurel,** | **New Jersey** |
| **[Date]** | **[City]** | **[State]** |

**28 Pine Street, Moorestown, NJ 08057**
**[Property Address]**

**1. BORROWER'S PROMISE TO PAY**

In return for a loan in the amount of U.S. **$308,000.00** (the "Principal") that I have received from **American Neighborhood Mortgage Acceptance Company LLC., a Limited Liability Company**

(the "Lender"), I promise to pay the Principal, plus interest, to the order of the Lender. I will make all payments under this Note in U.S. currency in the form of cash, check, money order, or other payment method accepted by Lender.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid Principal until the full amount of the Principal has been paid. I will pay interest at a yearly rate of **6.490 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month. This amount is called my "Monthly Payment."

I will make my Monthly Payment on the **1st** day of each month beginning on **June 1, 2023.** I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each Monthly Payment will be applied as of its scheduled due date and will be applied to interest before the Principal. If, on **May 1, 2053,** I still owe amounts under this Note, I will pay those amounts on that date, which is called the "Maturity Date."

I will make my Monthly Payments at **700 East Gate Drive, Suite 400**
**Mt. Laurel, NJ 08054**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My Monthly Payment will be in the amount of U.S. **$1,944.74.** This payment amount does not include any property taxes, insurance, or other charges that I may be required to pay each month.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will notify the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the Monthly Payments then due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my Monthly Payment unless the Note Holder agrees in writing to those changes.



[redacted]

LOAN #: [redacted]

**5. LOAN CHARGES**

If applicable law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any Monthly Payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue Monthly Payment. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each Monthly Payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of unpaid Principal, all the interest that I owe on that amount, and other charges due under this Note (the "Default Balance"). That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

If I am in default and the Note Holder does not require me to pay the Default Balance immediately as described above, the Note Holder will still have the right to do so if I continue to be in default or if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay the Default Balance immediately as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees and costs.

**7. GIVING OF NOTICES**

**(A) Notice to Borrower**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it, or by mailing it by first class mail, to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. I will promptly notify the Note Holder of any change to my physical address and of any change to my mailing address. Unless applicable law requires otherwise, notice may instead be sent by e-mail or other electronic communication if agreed to by me and the Note Holder in writing and if I have provided the Note Holder with my current e-mail address or other electronic address. If I have agreed with the Note Holder that notice may be given by e-mail or other electronic communication, I will promptly notify the Note Holder of any changes to my e-mail address or other electronic address.

**(B) Notice to Note Holder**

Any notice that I must give to the Note Holder under this Note will be delivered by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

LOAN #: [redacted]

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Mortgage Deed, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument also describes how and under what conditions I may be required to make immediate payment of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's Interest in the Property and/or rights under this Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

______________________________ **(Seal)**
**ABINA DUNCAN**

***[Sign Original Only]***

**Lender: American Neighborhood Mortgage Acceptance Company LLC.**
**NMLS ID:** [redacted]
**Loan Originator: Eric Hutton**
**NMLS ID:** [redacted]

[redacted]

# ALLONGE TO NOTE

LOAN NUMBER: [redacted]

LOAN AMOUNT: $308,000.00

ALLONGE TO ONE CERTAIN NOTE DATE: **04/06/2023**

AND EXECUTED BY: **Abina Duncan**

PROPERTY ADDRESS: **28 Pine Street, Moorestown, NJ 08057**

PAY TO THE ORDER OF: Nationstar Mortgage LLC dba Mr. Cooper

WITHOUT RECOURSE: American Neighborhood Mortgage Acceptance Company, LLC, A Limited Liability Company

BY: ______________________________

TITLE: Ileana Parkinson
Post Closing Manager

[redacted]

# ALLONGE TO NOTE

**LOAN NUMBER:** [redacted]

**NOTE DATE:** April 6, 2023

**LOAN AMOUNT:** $308,000.00

**PROPERTY ADDRESS:**

28 PINE STREET
MOORESTOWN, NJ 08057

**AND EXECUTED BY:**

ABINA DUNCAN

**PAY TO THE ORDER OF**

**WITHOUT RECOURSE**

Nationstar Mortgage LLC dba Mr. Cooper

**BY:** Kevin McDaniel
**TITLE: Assistant Secretary**
**DATE:** April 18, 2023

# EXHIBIT "B"

[redacted]

Exhibit [redacted] 0

# RECORDING INFORMATION SHEET

50 RANCOCAS RD,
MT. HOLLY, NJ 08060

| | |
|---|---|
| INSTRUMENT NUMBER:<br>5823963 | DOCUMENT TYPE:<br>MORTGAGE |

**Official Use Only**

JOANNE SCHWARTZ
BURLINGTON COUNTY

RECEIPT NUMBER
[redacted]
RECORDED ON
April 11, 2023 4:01 PM

INSTRUMENT NUMBER
5823963

BOOK: OR13666
PAGE: 584

| | |
|---|---|
| **Document Charge Type** | MORTGAGE |
| **Return Address** *(for recorded documents)* | LLC SIMPLIFILE<br>4844 NORTH 300 WEST<br>PROVO UT 84604 |
| **No. Of Pages** *(Excluding Recording Information and/or Summary Sheet)* | 12 |
| **Consideration Amount** | $308,000.00 |
| **Recording Fee** | $145.00 |
| **Realty Transfer Fee** | $0.00 |
| **Total Amount Paid** | $145.00 |
| **Municipality** | MOORESTOWN TWP |
| **Parcel Information** | [redacted] |
| **First Party Name** | ABINA DUNCAN |
| **Second Party Name** | AMERICAN NEIGHBORHOOD MTG ACCEPTANCE CO |

**Additional Information (Official Use Only)**

[redacted]

Ctrl Id: [redacted] Recording Clerk: drogers

****************************** *DO NOT REMOVE THIS PAGE.* ******************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*
******************* *RETAIN THIS PAGE FOR FUTURE REFERENCE.* *******************

# Burlington County Document Summary Sheet

BURLINGTON COUNTY CLERK

50 RANCOCAS RD

MOUNT HOLLY NJ 08060 1317

**Transaction Identification Number** [redacted]

**Recorded Document to be Returned by Submitter to:**

MONARCH TITLE AGENCY, INC.

427 WHITEHORSE AVE

HAMILTON, NJ 08610

**Official Use Only**

| | |
|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 04/11/2023 |
| **No. of Pages** *(excluding Summary Sheet)* | 12 |
| **Recording Fee** *(excluding transfer tax)* | $145.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $145.00 |
| **Document Type** | MORTGAGE |

**Electronic Recordation Level** L2 - Level 2 (With Images)

**Municipal Codes**

MOORESTOWN TWP 22

[redacted]

**Additional Information (Official Use Only)**

** DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

# Burlington County Document Summary Sheet

| | | | | | | |
|---|---|---|---|---|---|---|
| MORTGAGE | Type | MORTGAGE | | | | |
| | Consideration | $308,000.00 | | | | |
| | Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| | Document Date | 04/06/2023 | | | | |
| | Reference Info | | | | | |
| | Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date | |
| | | | | | | |
| | MORTGAGOR | Name | | Address | | |
| | | ABINA DUNCAN | | | | |
| | MORTGAGEE | Name | | Address | | |
| | | AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC | | | | |
| | | MERS | | | | |
| | Parcel Info | | | | | |
| | Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | 22 | 602 | 17 & 18 | | 22 |

**** DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

[redacted]

When recorded, return to:
First American Mortgage Solutions On
Behalf of AnnieMac Home Mortgage
Attn: Final Document Department
1795 International Way
Idaho Falls, ID 83402

This document was prepared by:
Kevin Byrd, Loan Closer
American Neighborhood Mortgage
Acceptance Company LLC
700 East Gate Drive, Suite 400
Mount Laurel, NJ 08054
856-252-1806

**Title Order No.:** [redacted]

**LOAN #:** [redacted]

[Space Above This Line For Recording Data]

# MORTGAGE

**MIN** [redacted]
**MERS PHONE #:** [redacted]

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined under the caption TRANSFER OF RIGHTS IN THE PROPERTY and in Sections 3, 4, 10, 11, 12, 16, 19, 24, and 25. Certain rules regarding the usage of words used in this document are also provided in Section 17.

**Parties**

**(A) "Borrower"** is **ABINA DUNCAN, SINGLE WOMAN**

currently residing at **28 Pine Street, Moorestown, NJ 08057.**

Borrower is the mortgagor under this Security Instrument.
**(B) "Lender"** is **American Neighborhood Mortgage Acceptance Company LLC..**

Lender is a **Limited Liability Company,** organized and existing under the laws of **Delaware.** Lender's address is **700 East Gate Drive, Suite 400, Mt. Laurel, NJ 08054.**
The term "Lender" includes any successors and assigns of Lender.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**Documents**

**(D) "Note"** means the promissory note dated **April 6, 2023,** and signed by each Borrower who is legally obligated for the debt under that promissory note, that is in either (i) paper form, using Borrower's written pen and ink signature, or (ii) electronic form, using Borrower's adopted Electronic Signature in accordance with the UETA or E-SIGN, as applicable. The Note evidences the legal obligation of each Borrower who signed the Note to pay Lender **THREE HUNDRED EIGHT THOUSAND AND NO/100*** ********************************************* ******************************************* Dollars (U.S. **$308,000.00** ) plus interest. Each Borrower who signed the Note has promised to pay this debt in regular monthly payments and to pay the debt in full not later than **May 1, 2053.**



[redacted]

**(E) "Riders"** means all Riders to this Security Instrument that are signed by Borrower. All such Riders are incorporated into and deemed to be a part of this Security Instrument. The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ 1-4 Family Rider | ☐ Planned Unit Development Rider | ☐ V.A. Rider |
| ☐ Other(s) [specify] | | |

**(F) "Security Instrument"** means this document, which is dated **April 6, 2023,** together with all Riders to this document.

**Additional Definitions**

**(G) "Applicable Law"** means all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(H) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association, or similar organization.
**(I) "Default"** means: (i) the failure to pay any Periodic Payment or any other amount secured by this Security Instrument on the date it is due; (ii) a breach of any representation, warranty, covenant, obligation, or agreement in this Security Instrument; (iii) any materially false, misleading, or inaccurate information or statement to Lender provided by Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent, or failure to provide Lender with material information in connection with the Loan, as described in Section 8; or (iv) any action or proceeding described in Section 12(e).
**(J) "Electronic Fund Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone or other electronic device capable of communicating with such financial institution, wire transfers, and automated clearinghouse transfers.
**(K) "Electronic Signature"** means an "Electronic Signature" as defined in the UETA or E-SIGN, as applicable.
**(L) "E-SIGN"** means the Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 *et seq.*), as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.
**(M) "Escrow Items"** means: (i) taxes and assessments and other items that can attain priority over this Security Instrument as a lien or encumbrance on the Property; (ii) leasehold payments or ground rents on the Property, if any; (iii) premiums for any and all insurance required by Lender under Section 5; (iv) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 11; and (v) Community Association Dues, Fees, and Assessments if Lender requires that they be escrowed beginning at Loan closing or at any time during the Loan term.
**(N) "Loan"** means the debt obligation evidenced by the Note, plus interest, any prepayment charges, costs, expenses, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(O) "Loan Servicer"** means the entity that has the contractual right to receive Borrower's Periodic Payments and any other payments made by Borrower, and administers the Loan on behalf of Lender. Loan Servicer does not include a sub-servicer, which is an entity that may service the Loan on behalf of the Loan Servicer.
**(P) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(Q) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or Default on, the Loan.
**(R) "Partial Payment"** means any payment by Borrower, other than a voluntary prepayment permitted under the Note, which is less than a full outstanding Periodic Payment.
**(S) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3.
**(T) "Property"** means the property described below under the heading "TRANSFER OF RIGHTS IN THE PROPERTY."
**(U) "Rents"** means all amounts received by or due Borrower in connection with the lease, use, and/or occupancy of the Property by a party other than Borrower.
**(V) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter. When used in this Security Instrument, "RESPA" refers to all requirements and restrictions that would apply to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(W) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.
**(X) "UETA"** means the Uniform Electronic Transactions Act, as enacted by the jurisdiction in which the Property is located, as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the

LOAN #: [redacted]

Note. For this purpose, Borrower mortgages, grants, and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the **County** of **Burlington:**

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**

which currently has the address of **28 Pine Street, Moorestown** [Street] [City]

New Jersey **08057** ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or subsequently erected on the property, including replacements and additions to the improvements on such property, all property rights, including, without limitation, all easements, appurtenances, royalties, mineral rights, oil or gas rights or profits, water rights, and fixtures now or subsequently a part of the property. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER REPRESENTS, WARRANTS, COVENANTS, AND AGREES that: (i) Borrower lawfully owns and possesses the Property conveyed in this Security Instrument in fee simple or lawfully has the right to use and occupy the Property under a leasehold estate; (ii) Borrower has the right to mortgage, grant, and convey the Property or Borrower's leasehold interest in the Property; and (iii) the Property is unencumbered, and not subject to any other ownership interest in the Property, except for encumbrances and ownership interests of record. Borrower warrants generally the title to the Property and covenants and agrees to defend the title to the Property against all claims and demands, subject to any encumbrances and ownership interests of record as of Loan closing.

THIS SECURITY INSTRUMENT combines uniform covenants for national use with limited variations and non-uniform covenants that reflect specific New Jersey state requirements to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower will pay each Periodic Payment when due. Borrower will also pay any prepayment charges and late charges due under the Note, and any other amounts due under this Security Instrument. Payments due under the Note and this Security Instrument must be made in U.S. currency. If any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (d) Electronic Fund Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 16. Lender may accept or return any Partial Payments in its sole discretion pursuant to Section 2.

Any offset or claim that Borrower may have now or in the future against Lender will not relieve Borrower from making the full amount of all payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Acceptance and Application of Payments or Proceeds.**

**(a) Acceptance and Application of Partial Payments.** Lender may accept and either apply or hold in suspense Partial Payments in its sole discretion in accordance with this Section 2. Lender is not obligated to accept any Partial Payments or to apply any Partial Payments at the time such payments are accepted, and also is not obligated to pay interest on such unapplied funds. Lender may hold such unapplied funds until Borrower makes payment sufficient to cover a full Periodic Payment, at which time the amount of the full Periodic Payment will be applied to the Loan. If Borrower does not make such a payment within a reasonable period of time, Lender will either apply such funds in accordance with this Section 2 or return them to Borrower. If not applied earlier, Partial Payments will be credited against the total amount due under the Loan in calculating the amount due in connection with any foreclosure proceeding, payoff request, loan modification, or reinstatement. Lender may accept any payment insufficient to bring the Loan current without waiver of any rights under this Security Instrument or prejudice to its rights to refuse such payments in the future.

LOAN #: [redacted]

**(b) Order of Application of Partial Payments and Periodic Payments.** Except as otherwise described in this Section 2, if Lender applies a payment, such payment will be applied to each Periodic Payment in the order in which it became due, beginning with the oldest outstanding Periodic Payment, as follows: first to interest and then to principal due under the Note, and finally to Escrow Items. If all outstanding Periodic Payments then due are paid in full, any payment amounts remaining may be applied to late charges and to any amounts then due under this Security Instrument. If all sums then due under the Note and this Security Instrument are paid in full, any remaining payment amount may be applied, in Lender's sole discretion, to a future Periodic Payment or to reduce the principal balance of the Note.

If Lender receives a payment from Borrower in the amount of one or more Periodic Payments and the amount of any late charge due for a delinquent Periodic Payment, the payment may be applied to the delinquent payment and the late charge.

When applying payments, Lender will apply such payments in accordance with Applicable Law.

**(c) Voluntary Prepayments.** Voluntary prepayments will be applied as described in the Note.

**(d) No Change to Payment Schedule.** Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.**

**(a) Escrow Requirement; Escrow Items.** Borrower must pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum of money to provide for payment of amounts due for all Escrow Items (the "Funds"). The amount of the Funds required to be paid each month may change during the term of the Loan. Borrower must promptly furnish to Lender all notices or invoices of amounts to be paid under this Section 3.

**(b) Payment of Funds; Waiver.** Borrower must pay Lender the Funds for Escrow Items unless Lender waives this obligation in writing. Lender may waive this obligation for any Escrow Item at any time. In the event of such waiver, Borrower must pay directly, when and where payable, the amounts due for any Escrow Items subject to the waiver. If Lender has waived the requirement to pay Lender the Funds for any or all Escrow Items, Lender may require Borrower to provide proof of direct payment of those items within such time period as Lender may require. Borrower's obligation to make such timely payments and to provide proof of payment is deemed to be a covenant and agreement of Borrower under this Security Instrument. If Borrower is obligated to pay Escrow Items directly pursuant to a waiver, and Borrower fails to pay timely the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to pay such amount and Borrower will be obligated to repay to Lender any such amount in accordance with Section 9.

Lender may withdraw the waiver as to any or all Escrow Items at any time by giving a notice in accordance with Section 16; upon such withdrawal, Borrower must pay to Lender all Funds for such Escrow Items, and in such amounts, that are then required under this Section 3.

**(c) Amount of Funds; Application of Funds.** Lender may, at any time, collect and hold Funds in an amount up to, but not in excess of, the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due in accordance with Applicable Law.

The Funds will be held in an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender will apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender may not charge Borrower for: (i) holding and applying the Funds; (ii) annually analyzing the escrow account; or (iii) verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on the Funds, Lender will not be required to pay Borrower any interest or earnings on the Funds. Lender will give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

**(d) Surplus; Shortage and Deficiency of Funds.** In accordance with RESPA, if there is a surplus of Funds held in escrow, Lender will account to Borrower for such surplus. If Borrower's Periodic Payment is delinquent by more than 30 days, Lender may retain the surplus in the escrow account for the payment of the Escrow Items. If there is a shortage or deficiency of Funds held in escrow, Lender will notify Borrower and Borrower will pay to Lender the amount necessary to make up the shortage or deficiency in accordance with RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender will promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower must pay (a) all taxes, assessments, charges, fines, and impositions attributable to the Property which have priority or may attain priority over this Security Instrument, (b) leasehold payments or ground rents on the Property, if any, and (c) Community Association Dues, Fees, and Assessments, if any. If any of these items are Escrow Items, Borrower will pay them in the manner provided in Section 3.

Borrower must promptly discharge any lien that has priority or may attain priority over this Security Instrument unless Borrower: (aa) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing under such agreement; (bb) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which Lender determines, in its sole discretion, operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (cc) secures from the holder of the lien an agreement satisfactory to Lender that subordinates the lien to this Security Instrument (collectively, the "Required Actions"). If Lender determines that any part of the Property is subject to a lien that has priority or may attain priority over this Security Instrument and Borrower has not taken any of the Required Actions in regard to such lien, Lender may give Borrower a notice identifying the lien. Within 10 days after the date on which that notice is given, Borrower must satisfy the lien or take one or more of the Required Actions.

**5. Property Insurance.**

**(a) Insurance Requirement; Coverages.** Borrower must keep the improvements now existing or subsequently erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes, winds, and floods, for which Lender requires insurance. Borrower must maintain the types of insurance Lender requires in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan, and may exceed any minimum coverage required by Applicable Law. Borrower may choose the insurance carrier providing the insurance, subject to Lender's right to disapprove Borrower's choice, which right will not be exercised unreasonably.

**(b) Failure to Maintain Insurance.** If Lender has a reasonable basis to believe that Borrower has failed to maintain any of the required insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and at Borrower's expense. Unless required by Applicable Law, Lender is under no obligation to advance premiums for, or to seek to reinstate, any prior lapsed coverage obtained by Borrower. Lender is under no obligation to purchase any particular type or amount of coverage and may select the provider of such insurance in its sole discretion. Before purchasing such coverage, Lender will notify Borrower if required to do so under Applicable Law. Any such coverage will insure Lender, but might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect, but not exceeding the coverage required under Section 5(a). Borrower acknowledges that the cost of the insurance coverage so obtained may significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender for costs associated with reinstating Borrower's insurance policy or with placing new insurance under this Section 5 will become additional debt of Borrower secured by this Security Instrument. These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**(c) Insurance Policies.** All insurance policies required by Lender and renewals of such policies: (i) will be subject to Lender's right to disapprove such policies; (ii) must include a standard mortgage clause; and (iii) must name Lender as mortgagee and/or as an additional loss payee. Lender will have the right to hold the policies and renewal certificates. If Lender requires, Borrower will promptly give to Lender proof of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy must include a standard mortgage clause and must name Lender as mortgagee and/or as an additional loss payee.

**(d) Proof of Loss; Application of Proceeds.** In the event of loss, Borrower must give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Any insurance proceeds, whether or not the underlying insurance was required by Lender, will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and determines that Lender's security will not be lessened by such restoration or repair.

If the Property is to be repaired or restored, Lender will disburse from the insurance proceeds any initial amounts that are necessary to begin the repair or restoration, subject to any restrictions applicable to Lender. During the subsequent repair and restoration period, Lender will have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Lender will not be required to pay Borrower any interest or earnings on such insurance proceeds unless Lender and Borrower agree in writing or Applicable Law requires otherwise. Fees for public adjusters, or other third parties, retained by Borrower will not be paid out of the insurance proceeds and will be the sole obligation of Borrower.

If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the insurance proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

**(e) Insurance Settlements; Assignment of Proceeds.** If Borrower abandons the Property, Lender may file, negotiate, and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 26 or otherwise, Borrower is unconditionally assigning to Lender (i) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note and this Security Instrument, and (ii) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, to the extent that such rights are applicable to the coverage of the Property. If Lender files, negotiates, or settles a claim, Borrower agrees that any insurance proceeds may be made payable directly to Lender without the need to include Borrower as an additional loss payee. Lender may use the insurance proceeds either to repair or restore the Property (as provided in Section 5(d)) or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower must occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and must continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent will not be unreasonably withheld, or unless extenuating circumstances exist that are beyond Borrower's control.

**7. Preservation, Maintenance, and Protection of the Property; Inspections.** Borrower will not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower must maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless Lender determines pursuant to Section 5 that repair or restoration is not economically feasible, Borrower will promptly repair the Property if damaged to avoid further deterioration or damage.

If insurance or condemnation proceeds are paid to Lender in connection with damage to, or the taking of, the Property, Borrower will be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower remains obligated to complete such repair or restoration.

Lender may make reasonable entries upon and inspections of the Property. If Lender has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender will give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower will be in Default if, during the Loan application process, Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan, including, but not limited to, overstating Borrower's income or assets, understating or failing to provide documentation of Borrower's debt obligations and liabilities, and misrepresenting Borrower's occupancy or intended occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**

**(a) Protection of Lender's Interest.** If: (i) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (ii) there is a legal proceeding or government order that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that has priority or may attain priority over this Security Instrument, or to enforce laws or regulations); or (iii) Lender reasonably believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and/or rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (I) paying any sums secured by a lien that has priority or may attain priority over this Security Instrument; (II) appearing in court; and (III) paying: (A) reasonable attorneys' fees and costs; (B) property inspection and valuation fees; and (C) other fees incurred for the purpose of protecting Lender's interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, exterior and interior inspections of the Property, entering the Property to make repairs, changing locks, replacing or boarding up doors and windows, draining water from pipes, eliminating building or other code violations or dangerous conditions, and having utilities turned on or off. Although Lender may take action under this Section 9, Lender is not required to do so and is not under any duty or obligation to do so. Lender will not be liable for not taking any or all actions authorized under this Section 9.

**(b) Avoiding Foreclosure; Mitigating Losses.** If Borrower is in Default, Lender may work with Borrower to avoid foreclosure and/or mitigate Lender's potential losses, but is not obligated to do so unless required by Applicable Law. Lender may take reasonable actions to evaluate Borrower for available alternatives to foreclosure, including, but not limited to, obtaining credit reports, title reports, title insurance, property valuations, subordination agreements, and third-party approvals. Borrower authorizes and consents to these actions. Any costs associated with such loss mitigation activities may be paid by Lender and recovered from Borrower as described below in Section 9(c), unless prohibited by Applicable Law.

**(c) Additional Amounts Secured.** Any amounts disbursed by Lender under this Section 9 will become additional debt of Borrower secured by this Security Instrument. These amounts may bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**(d) Leasehold Terms.** If this Security Instrument is on a leasehold, Borrower will comply with all the provisions of the lease. Borrower will not surrender the leasehold estate and interests conveyed or terminate or cancel the ground lease. Borrower will not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title will not merge unless Lender agrees to the merger in writing.

**10. Assignment of Rents.**

**(a) Assignment of Rents.** If the Property is leased to, used by, or occupied by a third party ("Tenant"), Borrower is unconditionally assigning and transferring to Lender any Rents, regardless of to whom the Rents are payable. Borrower authorizes Lender to collect the Rents, and agrees that each Tenant will pay the Rents to Lender. However, Borrower will receive the Rents until (i) Lender has given Borrower notice of Default pursuant to Section 26, and (ii) Lender has given notice to the Tenant that the Rents are to be paid to Lender. This Section 10 constitutes an absolute assignment and not an assignment for additional security only.

**(b) Notice of Default.** If Lender gives notice of Default to Borrower: (i) all Rents received by Borrower must be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender will be entitled to collect and receive all of the Rents; (iii) Borrower agrees to instruct each Tenant that Tenant is to pay all Rents due and unpaid to Lender upon Lender's written demand to the Tenant; (iv) Borrower will ensure that each Tenant pays all Rents due to Lender and will take whatever action is necessary to collect such Rents if not paid to Lender; (v) unless Applicable Law provides otherwise, all Rents collected by Lender will be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, reasonable attorneys' fees and costs, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property, and then to any other sums secured by this Security Instrument; (vi) Lender, or any judicially appointed receiver, will be liable to account for only those Rents actually received; and (vii) Lender will be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

**(c) Funds Paid by Lender.** If the Rents are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds paid by Lender for such purposes will become indebtedness of Borrower to Lender secured by this Security Instrument pursuant to Section 9.

**(d) Limitation on Collection of Rents.** Borrower may not collect any of the Rents more than one month in advance of the time when the Rents become due, except for security or similar deposits.

**(e) No Other Assignment of Rents.** Borrower represents, warrants, covenants, and agrees that Borrower has not signed any prior assignment of the Rents, will not make any further assignment of the Rents, and has not performed, and will not perform, any act that could prevent Lender from exercising its rights under this Security Instrument.

**(f) Control and Maintenance of the Property.** Unless required by Applicable Law, Lender, or a receiver appointed under Applicable Law, is not obligated to enter upon, take control of, or maintain the Property before or after giving notice of Default to Borrower. However, Lender, or a receiver appointed under Applicable Law, may do so at any time when Borrower is in Default, subject to Applicable Law.

**(g) Additional Provisions.** Any application of the Rents will not cure or waive any Default or invalidate any other right or remedy of Lender. This Section 10 does not relieve Borrower of Borrower's obligations under Section 6.

This Section 10 will terminate when all the sums secured by this Security Instrument are paid in full.

LOAN #: [redacted]

**11. Mortgage Insurance.**

**(a) Payment of Premiums; Substitution of Policy; Loss Reserve; Protection of Lender.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower will pay the premiums required to maintain the Mortgage Insurance in effect. If Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, and (i) the Mortgage Insurance coverage required by Lender ceases for any reason to be available from the mortgage insurer that previously provided such insurance, or (ii) Lender determines in its sole discretion that such mortgage insurer is no longer eligible to provide the Mortgage Insurance coverage required by Lender, Borrower will pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Borrower will continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use, and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve will be non-refundable, even when the Loan is paid in full, and Lender will not be required to pay Borrower any interest or earnings on such loss reserve.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower will pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 11 affects Borrower's obligation to pay interest at the Note rate.

**(b) Mortgage Insurance Agreements.** Mortgage Insurance reimburses Lender for certain losses Lender may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy or coverage.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. Any such agreements will not: (i) affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan; (ii) increase the amount Borrower will owe for Mortgage Insurance; (iii) entitle Borrower to any refund; or (iv) affect the rights Borrower has, if any, with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 (12 U.S.C. § 4901 *et seq.*), as it may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter ("HPA"). These rights under the HPA may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**12. Assignment and Application of Miscellaneous Proceeds; Forfeiture.**

**(a) Assignment of Miscellaneous Proceeds.** Borrower is unconditionally assigning the right to receive all Miscellaneous Proceeds to Lender and agrees that such amounts will be paid to Lender.

**(b) Application of Miscellaneous Proceeds upon Damage to Property.** If the Property is damaged, any Miscellaneous Proceeds will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and Lender's security will not be lessened by such restoration or repair. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

**(c) Application of Miscellaneous Proceeds upon Condemnation, Destruction, or Loss in Value of the Property.** In the event of a total taking, destruction, or loss in value of the Property, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property (each, a "Partial Devaluation") where the fair market value of the Property immediately before the Partial Devaluation is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the Partial Devaluation, a percentage of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument unless Borrower and Lender otherwise agree in writing. The amount of the Miscellaneous Proceeds that will be so applied is determined by multiplying the total amount of the Miscellaneous Proceeds by a percentage calculated by taking (i) the total amount of the sums secured immediately before the Partial Devaluation, and dividing it by (ii) the fair market value of the Property immediately before the Partial Devaluation. Any balance of the Miscellaneous Proceeds will be paid to Borrower.



[redacted]

In the event of a Partial Devaluation where the fair market value of the Property immediately before the Partial Devaluation is less than the amount of the sums secured immediately before the Partial Devaluation, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not the sums are then due, unless Borrower and Lender otherwise agree in writing.

**(d) Settlement of Claims.** Lender is authorized to collect and apply the Miscellaneous Proceeds either to the sums secured by this Security Instrument, whether or not then due, or to restoration or repair of the Property, if Borrower (i) abandons the Property, or (ii) fails to respond to Lender within 30 days after the date Lender notifies Borrower that the Opposing Party (as defined in the next sentence) offers to settle a claim for damages. "Opposing Party" means the third party that owes Borrower the Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to the Miscellaneous Proceeds.

**(e) Proceeding Affecting Lender's Interest in the Property.** Borrower will be in Default if any action or proceeding begins, whether civil or criminal, that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a Default and, if acceleration has occurred, reinstate as provided in Section 20, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower is unconditionally assigning to Lender the proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property, which proceeds will be paid to Lender. All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order that Partial Payments are applied in Section 2(b).

**13. Borrower Not Released; Forbearance by Lender Not a Waiver.** Borrower or any Successor in Interest of Borrower will not be released from liability under this Security Instrument if Lender extends the time for payment or modifies the amortization of the sums secured by this Security Instrument. Lender will not be required to commence proceedings against any Successor in Interest of Borrower, or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument, by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities, or Successors in Interest of Borrower or in amounts less than the amount then due, will not be a waiver of, or preclude the exercise of, any right or remedy by Lender.

**14. Joint and Several Liability; Signatories; Successors and Assigns Bound.** Borrower's obligations and liability under this Security Instrument will be joint and several. However, any Borrower who signs this Security Instrument but does not sign the Note: (a) signs this Security Instrument to mortgage, grant, and convey such Borrower's interest in the Property under the terms of this Security Instrument; (b) signs this Security Instrument to waive any applicable inchoate rights such as dower and curtesy and any available homestead exemptions; (c) signs this Security Instrument to assign any Miscellaneous Proceeds, Rents, or other earnings from the Property to Lender; (d) is not personally obligated to pay the sums due under the Note or this Security Instrument; and (e) agrees that Lender and any other Borrower can agree to extend, modify, forbear, or make any accommodations with regard to the terms of the Note or this Security Instrument without such Borrower's consent and without affecting such Borrower's obligations under this Security Instrument.

Subject to the provisions of Section 19, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, will obtain all of Borrower's rights, obligations, and benefits under this Security Instrument. Borrower will not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.

**15. Loan Charges.**

**(a) Tax and Flood Determination Fees.** Lender may require Borrower to pay (i) a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan, and (ii) either (A) a one-time charge for flood zone determination, certification, and tracking services, or (B) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur that reasonably might affect such determination or certification. Borrower will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency, or any successor agency, at any time during the Loan term, in connection with any flood zone determinations.

**(b) Default Charges.** If permitted under Applicable Law, Lender may charge Borrower fees for services performed in connection with Borrower's Default to protect Lender's interest in the Property and rights under this Security Instrument, including: (i) reasonable attorneys' fees and costs; (ii) property inspection, valuation, mediation, and loss mitigation fees; and (iii) other related fees.

**(c) Permissibility of Fees.** In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower should not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

**(d) Savings Clause.** If Applicable Law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**16. Notices; Borrower's Physical Address.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.

**(a) Notices to Borrower.** Unless Applicable Law requires a different method, any written notice to Borrower in connection with this Security Instrument will be deemed to have been given to Borrower when (i) mailed by first class mail, or (ii) actually delivered to Borrower's Notice Address (as defined in Section 16(c) below) if sent by means other than first class mail or Electronic Communication (as defined in Section 16(b) below). Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. If any notice to Borrower required by this

Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**(b) Electronic Notice to Borrower.** Unless another delivery method is required by Applicable Law, Lender may provide notice to Borrower by e-mail or other electronic communication ("Electronic Communication") if: (i) agreed to by Lender and Borrower in writing; (ii) Borrower has provided Lender with Borrower's e-mail or other electronic address ("Electronic Address"); (iii) Lender provides Borrower with the option to receive notices by first class mail or by other non-Electronic Communication instead of by Electronic Communication; and (iv) Lender otherwise complies with Applicable Law. Any notice to Borrower sent by Electronic Communication in connection with this Security Instrument will be deemed to have been given to Borrower when sent unless Lender becomes aware that such notice is not delivered. If Lender becomes aware that any notice sent by Electronic Communication is not delivered, Lender will resend such communication to Borrower by first class mail or by other non-Electronic Communication. Borrower may withdraw the agreement to receive Electronic Communications from Lender at any time by providing written notice to Lender of Borrower's withdrawal of such agreement.

**(c) Borrower's Notice Address.** The address to which Lender will send Borrower notice ("Notice Address") will be the Property Address unless Borrower has designated a different address by written notice to Lender. If Lender and Borrower have agreed that notice may be given by Electronic Communication, then Borrower may designate an Electronic Address as Notice Address. Borrower will promptly notify Lender of Borrower's change of Notice Address, including any changes to Borrower's Electronic Address if designated as Notice Address. If Lender specifies a procedure for reporting Borrower's change of Notice Address, then Borrower will report a change of Notice Address only through that specified procedure.

**(d) Notices to Lender.** Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated in this Security Instrument unless Lender has designated another address (including an Electronic Address) by notice to Borrower. Any notice in connection with this Security Instrument will be deemed to have been given to Lender only when actually received by Lender at Lender's designated address (which may include an Electronic Address). If any notice to Lender required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**(e) Borrower's Physical Address.** In addition to the designated Notice Address, Borrower will provide Lender with the address where Borrower physically resides, if different from the Property Address, and notify Lender whenever this address changes.

**17. Governing Law; Severability; Rules of Construction.** This Security Instrument is governed by federal law and the law of the State of New Jersey. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. If any provision of this Security Instrument or the Note conflicts with Applicable Law (i) such conflict will not affect other provisions of this Security Instrument or the Note that can be given effect without the conflicting provision, and (ii) such conflicting provision, to the extent possible, will be considered modified to comply with Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence should not be construed as a prohibition against agreement by contract. Any action required under this Security Instrument to be made in accordance with Applicable Law is to be made in accordance with the Applicable Law in effect at the time the action is undertaken.

As used in this Security Instrument: (a) words in the singular will mean and include the plural and vice versa; (b) the word "may" gives sole discretion without any obligation to take any action; (c) any reference to "Section" in this document refers to Sections contained in this Security Instrument unless otherwise noted; and (d) the headings and captions are inserted for convenience of reference and do not define, limit, or describe the scope or intent of this Security Instrument or any particular Section, paragraph, or provision.

**18. Borrower's Copy.** One Borrower will be given one copy of the Note and of this Security Instrument.

**19. Transfer of the Property or a Beneficial Interest in Borrower.** For purposes of this Section 19 only, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's Interest in the Property and/or rights under this Security Instrument.

**20. Borrower's Right to Reinstate the Loan after Acceleration.** If Borrower meets certain conditions, Borrower will have the right to reinstate the Loan and have enforcement of this Security Instrument discontinued at any time up to the later of (a) five days before any foreclosure sale of the Property, or (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate. This right to reinstate will not apply in the case of acceleration under Section 19.

To reinstate the Loan, Borrower must satisfy all of the following conditions: (aa) pay Lender all sums that then would be due under this Security Instrument and the Note as if no acceleration had occurred; (bb) cure any Default of any other covenants or agreements under this Security Instrument or the Note; (cc) pay all expenses incurred in enforcing this Security Instrument or the Note, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument or the Note; and (dd) take such action as Lender may reasonably require to assure that Lender's interest in the Property and/or rights under this Security Instrument or the Note, and Borrower's obligation to pay the sums secured by this Security Instrument or the Note, will continue unchanged.

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (aaa) cash; (bbb) money order; (ccc) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (ddd) Electronic Fund Transfer. Upon Borrower's reinstatement of the Loan, this Security Instrument and obligations secured by this Security Instrument will remain fully effective as if no acceleration had occurred.

**21. Sale of Note.** The Note or a partial interest in the Note, together with this Security Instrument, may be sold or otherwise transferred one or more times. Upon such a sale or other transfer, all of Lender's rights and obligations under this Security Instrument will convey to Lender's successors and assigns.

**22. Loan Servicer.** Lender may take any action permitted under this Security Instrument through the Loan Servicer or another authorized representative, such as a sub-servicer. Borrower understands that the Loan Servicer or other authorized representative of Lender has the right and authority to take any such action.

The Loan Servicer may change one or more times during the term of the Note. The Loan Servicer may or may not be the holder of the Note. The Loan Servicer has the right and authority to: (a) collect Periodic Payments and any other amounts due under the Note and this Security Instrument; (b) perform any other mortgage loan servicing obligations; and (c) exercise any rights under the Note, this Security Instrument, and Applicable Law on behalf of Lender. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing.

**23. Notice of Grievance.** Until Borrower or Lender has notified the other party (in accordance with Section 16) of an alleged breach and afforded the other party a reasonable period after the giving of such notice to take corrective action, neither Borrower nor Lender may commence, join, or be joined to any judicial action (either as an individual litigant or a member of a class) that (a) arises from the other party's actions pursuant to this Security Instrument or the Note, or (b) alleges that the other party has breached any provision of this Security Instrument or the Note. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 23. The notice of Default given to Borrower pursuant to Section 26(a) and the notice of acceleration given to Borrower pursuant to Section 19 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 23.

**24. Hazardous Substances.**

**(a) Definitions.** As used in this Section 24: (i) "Environmental Law" means any Applicable Laws where the Property is located that relate to health, safety, or environmental protection; (ii) "Hazardous Substances" include (A) those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law, and (B) the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, corrosive materials or agents, and radioactive materials; (iii) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (iv) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

**(b) Restrictions on Use of Hazardous Substances.** Borrower will not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower will not do, nor allow anyone else to do, anything affecting the Property that: (i) violates Environmental Law; (ii) creates an Environmental Condition; or (iii) due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects or could adversely affect the value of the Property. The preceding two sentences will not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

**(c) Notices; Remedial Actions.** Borrower will promptly give Lender written notice of: (i) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (ii) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance; and (iii) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower will promptly take all necessary remedial actions in accordance with Environmental Law. Nothing in this Security Instrument will create any obligation on Lender for an Environmental Cleanup.

**25. Electronic Note Signed with Borrower's Electronic Signature.** If the Note evidencing the debt for this Loan is electronic, Borrower acknowledges and represents to Lender that Borrower: (a) expressly consented and intended to sign the electronic Note using an Electronic Signature adopted by Borrower ("Borrower's Electronic Signature") instead of signing a paper Note with Borrower's written pen and ink signature; (b) did not withdraw Borrower's express consent to sign the electronic Note using Borrower's Electronic Signature; (c) understood that by signing the electronic Note using Borrower's Electronic Signature, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms; and (d) signed the electronic Note with Borrower's Electronic Signature with the intent and understanding that by doing so, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**26. Acceleration; Remedies.**

**(a) Notice of Default.** Lender will give a notice of Default to Borrower prior to acceleration following Borrower's Default, except that such notice of Default will not be sent when Lender exercises its right under Section 19 unless Applicable Law provides otherwise. The notice will specify, in addition to any other information required by Applicable Law: (i) the Default; (ii) the action required to cure the Default; (iii) a date, not less than 30 days (or as otherwise specified by Applicable Law) from the date the notice is given to Borrower, by which the Default must be cured; (iv) that failure to cure the Default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (v) Borrower's right to reinstate after acceleration;

**LOAN #:**[redacted]

and (vi) Borrower's right to deny in the foreclosure proceeding the existence of a Default or to assert any other defense of Borrower to acceleration and foreclosure; and (vii) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 *et seq.* of the New Jersey Statutes, or other Applicable Law.

**(b) Acceleration; Foreclosure; Expenses.** If the Default is not cured on or before the date specified in the notice, Lender may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. To the extent permitted by Rules of Court or allowed by Applicable Law, Lender will be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 26, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument.

**27. Release.** Upon payment of all sums secured by this Security Instrument, Lender will cancel this Security Instrument. Borrower will pay any recordation costs associated with such release. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**28. Fixture Filing.** To the extent that this Security Instrument serves as a fixture filing, the collateral covered is within the scope of the New Jersey Uniform Commercial Code pursuant to §§ 12A:9-102 and 12A:9-109 of the New Jersey Statutes.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider signed by Borrower and recorded with it.

4/6/23 **(Seal)**
**ABINA DUNCAN** **DATE**

**State of NEW JERSEY**
**County of BURLINGTON, ss**

**On APRIL 6, 2023, before me,** Paul K. Hummel Jr.**, Notary Public in and for said county, personally appeared ABINA DUNCAN and stated to my satisfaction, that this person (or if more than one, each person) a) was the maker of the within instrument and, b) executed this instrument as his or her own act.**

4/6/23
**Notary's signature** **DATE**

**My commission expires** 7/8/24

PAUL K. HUMMEL JR.
NOTARY PUBLIC OF NEW JERSEY
COMMISSION # 50000140
MY COMMISSION EXPIRES 07/08/2024

**Lender: American Neighborhood Mortgage Acceptance Company LLC**
**NMLS ID:**[redacted]
**Loan Originator: Eric Hutton**
**NMLS ID:**[redacted]

First American Title™

# ALTA Commitment for Title Insurance

ISSUED BY

**First American Title Insurance Company**

# Schedule C

[redacted]

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF BURLINGTON, STATE OF NEW JERSEY AND IS DESCRIBED AS FOLLOWS:

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Moorestown, County of Burlington, State of New Jersey, and being more particularly described as follows:

BEING known and designated as parts of Lot 15 and 16 as shown on map entitled "Plan of Lenola Acre Farm" filed on May 17, 1918 on Map No. 719.

FOR INFORMATIONAL PURPOSES ONLY: Commonly known as 28 Pine Street, Moorestown, New Jersey.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 17 and 18 in Block 602 on the Township of Moorestown Tax Map.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by First American Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.** The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN LAND TITLE ASSOCIATION

# EXHIBIT “C”

**RECORDING INFORMATION SHEET**

50 RANCOCAS RD,
MT. HOLLY, NJ 08060

| INSTRUMENT NUMBER: | DOCUMENT TYPE: |
|---|---|
| 5898025 | ASSIGNMENT OF MORTGAGE |

**Official Use Only**

JOANNE SCHWARTZ
BURLINGTON COUNTY

RECEIPT NUMBER
[redacted]

RECORDED ON
June 17, 2024 2:28 PM

INSTRUMENT NUMBER
5898025

BOOK: OR13722
PAGE: 1715

| | |
|---|---|
| **Document Charge Type** | ASSIGNMENT OF MORTGAGE |
| **Return Address** *(for recorded documents)* | LLC SIMPLIFILE<br>4844 NORTH 300 WEST<br>PROVO UT 84604 |
| **No. Of Pages** *(Excluding Recording Information and/or Summary Sheet)* | 1 |
| **Consideration Amount** | $0.00 |
| **Recording Fee** | $40.00 |
| **Realty Transfer Fee** | $0.00 |
| **Total Amount Paid** | $40.00 |
| **Municipality** | MOORESTOWN TWP |
| **Parcel Information** | **Block:** N/A<br>**Lot:** N/A |
| **First Party Name** | MORTGAGE ELEC REGISTRATION SYSTEMS INC |
| **Second Party Name** | NATIONSTAR MTG |

**Additional Information (Official Use Only)**

[redacted]

Ctrl Id: [redacted] Recording Clerk: kmonk

****************************** DO NOT REMOVE THIS PAGE. *******************************

*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*

********************* RETAIN THIS PAGE FOR FUTURE REFERENCE. **********************

Unofficial Document

## Burlington County Document Summary Sheet

| | |
|---|---|
| BURLINGTON COUNTY CLERK<br><br>50 RANCOCAS RD<br>MOUNT HOLLY NJ 08060 1317 | **Transaction Identification Number** [redacted]<br><br>**Recorded Document to be Returned by Submitter to:**<br>NATIONWIDE TITLE CLEARING, LLC<br>2100 ALT 19<br>PALM HARBOR, FL 34683 |

**Official Use Only**

| | |
|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 06/17/2024 |
| **No. of Pages** *(excluding Summary Sheet)* | 1 |
| **Recording Fee** *(excluding transfer tax)* | $40.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $40.00 |
| **Document Type** | ASSIGNMENT OF MORTGAGE |
| **Electronic Recordation Level** | L2 - Level 2 (With Images) |

**Municipal Codes**

MOORESTOWN TWP 22

[redacted]

**Additional Information (Official Use Only)**

**** DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

Unofficial Document

# Burlington County Document Summary Sheet

| | | | | | | |
|---|---|---|---|---|---|---|
| ASSIGNMENT OF MORTGAGE | Type | ASSIGNMENT OF MORTGAGE | | | | |
| | Consideration | | | | | |
| | Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| | Document Date | 06/13/2024 | | | | |
| | Reference Info | | | | | |
| | Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date | |
| | | 13666 | 584 | | | |
| | ASSIGNOR | Name | | Address | | |
| | | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE FOR | | | | |
| | ASSIGNEE | Name | | Address | | |
| | | NATIONSTAR MORTGAGE LLC | | | | |
| | Parcel Info | | | | | |
| | Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | 22 | 0 | 0 | | 22 |

Unofficial Document

***DO NOT REMOVE THIS PAGE.**
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.**
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

[redacted]

**When Recorded Return To:**
**Nationstar Mortgage LLC**
**C/O Nationwide Title Clearing, LLC**
**2100 Alt. 19 North**
**Palm Harbor, FL 34683**

[redacted]

# ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all liens, and any rights due or to become due thereon to **NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019 (469)549-2000, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage is dated on 04/06/2023, made by **ABINA DUNCAN** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC, ITS SUCCESSORS AND ASSIGNS,** and recorded in **Book OR13666 and Page 584**, in the office of the Register of Titles and County Recorder in **BURLINGTON** County, New Jersey.

Property is commonly known as: 28 PINE STREET MOORESTOWN TWP
MOORESTOWN, NJ 08057.

**Dated on** APR 23 2024 (MM/DD/YYYY)
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC, ITS SUCCESSORS AND ASSIGNS**

**By:** ______________________
Tsedale Alemu
Vice President

STATE OF Texas COUNTY OF Denton
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on APR 23 2024 (MM/DD/YYYY), by Tsedale Alemu as Vice President of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC, ITS SUCCESSORS AND ASSIGNS, who, as such Tsedale Alemu being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

______________________
Sylvia Ramirez
Notary Public - STATE OF Texas
Commission expires: MAR 13 2027

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-13-2027
Notary ID 131921660

[redacted] MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)
MRCNJDMND MIN [redacted] MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 [redacted]

Unofficial Document

[redacted]



| RECORDING INFORMATION SHEET | 50 RANCOCAS RD, MT. HOLLY, NJ 08060 |
|---|---|
| INSTRUMENT NUMBER: 5987090 | DOCUMENT TYPE: ASSIGNMENT OF MORTGAGE |

**Official Use Only**

JOANNE SCHWARTZ
BURLINGTON COUNTY

RECEIPT NUMBER
[redacted]

RECORDED ON
October 30, 2025 9:33 AM

INSTRUMENT NUMBER
5987090

BOOK: OR13791
PAGE: 8215

| | |
|---|---|
| **Document Charge Type** | ASSIGNMENT OF MORTGAGE |
| **Return Address** *(for recorded documents)* | LLC SIMPLIFILE<br>4844 NORTH 300 WEST<br>PROVO UT 84604 |
| **No. Of Pages** *(Excluding Recording Information and/or Summary Sheet)* | 1 |
| **Consideration Amount** | $0.00 |
| **Recording Fee** | $40.00 |
| **Realty Transfer Fee** | $0.00 |
| **Total Amount Paid** | $40.00 |
| **Municipality** | MOORESTOWN TWP |
| **Parcel Information** | **Block:** N/A<br>**Lot:** N/A |
| **First Party Name** | NATIONSTAR MTG |
| **Second Party Name** | SELECT PORTFOLIO SERV INC |

**Additional Information (Official Use Only)**

[redacted]

Ctrl Id: [redacted] Recording Clerk: Gvaughan

***************************** DO NOT REMOVE THIS PAGE. *****************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*
********************* RETAIN THIS PAGE FOR FUTURE REFERENCE. *********************

Unofficial Document

# Burlington County Document Summary Sheet

| | |
|---|---|
| BURLINGTON COUNTY CLERK<br><br>50 RANCOCAS RD<br>MOUNT HOLLY NJ 08060 1317 | **Transaction Identification Number** [redacted]<br><br>**Recorded Document to be Returned by Submitter to:**<br>NATIONWIDE TITLE CLEARING, LLC<br>2100 ALT 19<br>PALM HARBOR, FL 34683 |

**Official Use Only**

| | |
|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 10/20/2025 |
| **No. of Pages** *(excluding Summary Sheet)* | 1 |
| **Recording Fee** *(excluding transfer tax)* | $40.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $40.00 |
| **Document Type** | ASSIGNMENT OF MORTGAGE |
| **Electronic Recordation Level** | L2 - Level 2 (With Images) |

**Municipal Codes**

MOORESTOWN TWP 22

[redacted]

**Additional Information (Official Use Only)**

**** DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

Unofficial Document

# Burlington County Document Summary Sheet

| | | | | | | |
|---|---|---|---|---|---|---|
| ASSIGNMENT OF MORTGAGE | Type | ASSIGNMENT OF MORTGAGE | | | | |
| | Consideration | | | | | |
| | Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| | Document Date | 10/09/2025 | | | | |
| | Reference Info | | | | | |
| | Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date | |
| | | 13666 | 584 | | | |
| | ASSIGNOR | Name | Address | | | |
| | | NATIONSTAR MORTGAGE LLC | | | | |
| | ASSIGNEE | Name | Address | | | |
| | | SELECT PORTFOLIO SERVICING INC | | | | |
| | Parcel Info | | | | | |
| | Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
| | | 22 | 0 | 0 | | 22 |

Unofficial Document

**** DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

[redacted]

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

[redacted]

## CORPORATE ASSIGNMENT OF MORTGAGE

**Burlington, New Jersey**
**SELLER'S SERVICING #**[redacted]

Date of Assignment: October 2nd, 2025
Assignor: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: SELECT PORTFOLIO SERVICING, INC (SPS) at 3217 SOUTH DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119

Executed By: ABINA DUNCAN , SINGLE WOMAN To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC., ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 04/06/2023 Recorded: 04/11/2023 in Book/Reel/Liber: OR 13666 Page/Folio: 584 as Instrument No.: 5823963 In the County of Burlington, State of New Jersey.

Property Address: 28 PINE STREET, MOORESTOWN, NJ 08057

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $308,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

NATIONSTAR MORTGAGE LLC
On October 2nd, 2025

By: ______________________
TSEDALE ALEMU, Vice-President

STATE OF Texas
COUNTY OF Dallas

On October 2nd, 2025, before me, SYLVIA RAMIREZ, a Notary Public in and for Dallas in the State of Texas, personally appeared TSEDALE ALEMU , Vice-President of NATIONSTAR MORTGAGE LLC, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

SYLVIA RAMIREZ
Notary Expires: 03/13/2027 #131921660

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-13-2027
Notary ID 131921660

(This area for notarial seal)

Unofficial Document

[redacted]

# EXHIBIT "D"

**L.B.F. 3015.1**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

In re: Duncan, Abina A.

Chapter 13

Case No. **26-11667**

Debtor(s)

# Chapter 13 Plan

❑ Original
☑ **Second** Amended

Date: **10/20/2026**

**THE DEBTOR HAS FILED FOR RELIEF UNDER CHAPTER 13 OF THE BANKRUPTCY CODE**

**YOUR RIGHTS WILL BE AFFECTED**

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. **ANYONE WHO WISHES TO OPPOSE ANY PROVISION OF THIS PLAN MUST FILE A WRITTEN OBJECTION** in accordance with Bankruptcy Rule 3015 and Local Rule 3015-4. **This Plan may be confirmed and become binding, unless a written objection is filed.**

**IN ORDER TO RECEIVE A DISTRIBUTION UNDER THE PLAN, YOU MUST FILE A PROOF OF CLAIM BY THE DEADLINE STATED IN THE NOTICE OF MEETING OF CREDITORS.**

## Part 1: Bankruptcy Rule 3015.1(c) Disclosures

❑ Plan contains non-standard or additional provisions – see Part 9

❑ Plan limits the amount of secured claim(s) based on value of collateral and/or changed interest rate – see Part 4

❑ Plan avoids a security interest or lien – see Part 4 and/or Part 9

## Part 2: Plan Payment, Length and Distribution – *PARTS 2(c) & 2(e) MUST BE COMPLETED IN EVERY CASE*

**§ 2(a) Plan payments (For Initial and Amended Plans):**

**Total Length of Plan:** 60 **months.**

**Total Base Amount** to be paid to the Chapter 13 Trustee (“Trustee”) **$61,182.00**

Debtor shall pay the Trustee **$945.00** per month for **6** months and then
Debtor shall pay the Trustee **$1,028.00** per month for the remaining **54** months;

**or**

Debtor shall have already paid the Trustee ________ through month number ______ and

then shall pay the Trustee _______________ per month for the remaining ______ months.

☐ Other changes in the scheduled plan payment are set forth in § 2(d)

**§ 2(b) Debtor shall make plan payments to the Trustee from the following sources in addition to future wages (Describe source, amount and date when funds are available, if known):**

**§ 2(c) Alternative treatment of secured claims:**

☑ **None.** If "None" is checked, the rest of § 2(c) need not be completed.

**§ 2(d) Other information that may be important relating to the payment and length of Plan:**

**§ 2(e) Estimated Distribution:**

| | | | | |
|---|---|---|---|---|
| A. | Total Administrative Fees (Part 3) | | | |
| | 1. | Postpetition attorney's fees and costs | $ | 4,633.00 |
| | 2. | Postconfirmation Supplemental attorney's fees and costs | $ | 0.00 |
| | | Subtotal | $ | 4,633.00 |
| B. | Other Priority Claims (Part 3) | | $ | 727.22 |
| C. | Total distribution to cure defaults (§ 4(b)) | | $ | 21,595.47 |
| D. | Total distribution on secured claims (§§ 4(c) &(d)) | | $ | 28,063.40 |
| E. | Total distribution on general unsecured claims(Part 5) | | $ | 44.71 |
| | | Subtotal | $ | 55,063.80 |
| F. | Estimated Trustee's Commission | | $ | 6,118.20 |
| G. | Base Amount | | $ | 61,182.00 |

**§2 (f) Allowance of Compensation Pursuant to L.B.R. 2016-3(a)(2)**

☑ **By checking this box, Debtor's counsel certifies that the information contained in Counsel's Disclosure of Compensation [Form B2030] is accurate, qualifies counsel to receive compensation pursuant to L.B.R. 2016-3(a)(2), and requests this Court approve counsel's compensation in the total amount of $ 6,633.00 , with the Trustee distributing to counsel the amount stated in §2(e)A.1. of the Plan. Confirmation of the plan shall constitute allowance of the requested compensation.**

## Part 3: Priority Claims

**§ 3(a) Except as provided in § 3(b) below, all allowed priority claims will be paid in full unless the creditor agrees otherwise.**

Case 26-11667-amc Doc 24-1 Filed 10/30/25 Entered 10/30/25 10:55:46 Desc Exhibit Page 35 of 50

| Creditor | Proof of Claim Number | Type of Priority | Amount to be Paid by Trustee |
|---|---|---|---|
| Internal Revenue Service | 8 | Taxes or Penalties Owed to Governmental Units | $190.81 |
| Cibik Law, P.C. | | Attorney Fees | $4,633.00 |
| Pennsylvania Dept. of Revenue | 18 | Taxes or Penalties Owed to Governmental Units | $536.41 |

**§ 3(b) Domestic Support obligations assigned or owed to a governmental unit and paid less than full amount.**

☑ **None.** If "None" is checked, the rest of § 3(b) need not be completed.

## Part 4: Secured Claims

**§ 4(a) Secured Claims Receiving No Distribution from the Trustee:**

☑ **None.** If "None" is checked, the rest of § 4(a) need not be completed.

**§ 4(b) Curing default and maintaining payments**

☐ **None.** If "None" is checked, the rest of § 4(b) need not be completed.

The Trustee shall distribute an amount sufficient to pay allowed claims for prepetition arrearages; and, Debtor shall pay directly to creditor monthly obligations falling due after the bankruptcy filing in accordance with the parties' contract.

| Creditor | Proof of Claim Number | Description of Secured Property and Address, if real property | Amount to be Paid by Trustee |
|---|---|---|---|
| Select Portfolio Servicing, Inc (Arrearage) | 20 | 28 Pine St Moorestown, NJ 08057-1033 | $21,595.47 |

**§ 4(c) Allowed secured claims to be paid in full: based on proof of claim or preconfirmation determination of the amount, extent or validity of the claim**

☐ **None.** If "None" is checked, the rest of § 4(c) need not be completed.

(1) Allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

(2) If necessary, a motion, objection and/or adversary proceeding, as appropriate, will be filed to determine the amount, extent or validity of the allowed secured claim and the court will make its determination prior to the confirmation hearing.

(3) Any amounts determined to be allowed unsecured claims will be treated either: (A) as a general unsecured claim under Part 5 of the Plan or (B) as a priority claim under Part 3, as determined by the court.

(4) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) will be paid at the rate and in the amount listed below. *If the claimant included a different interest rate or amount for "present value" interest in its proof of claim or otherwise disputes the amount provided for "present value" interest, the claimant must file an objection to confirmation.*

(5) Upon completion of the Plan, payments made under this section satisfy the allowed secured claim and release the corresponding lien.

| Name of Creditor | Claim Number | Description of Secured Property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Amount to be Paid by Trustee |
|---|---|---|---|---|---|---|
| Penfed Cu | 21 | 2019 Acura TLX 2WD | $17,113.00 | 8.75% | $4,076.82 | $21,189.82 |
| State of New Jersey | 19 | All Property of the Debtor | $5,391.90 | 10.00% | $1,481.68 | $6,873.58 |

**§ 4(d) Allowed secured claims to be paid in full that are excluded from 11 U.S.C. § 506**

☑ **None.** If "None" is checked, the rest of § 4(d) need not be completed.

**§ 4(e) Surrender**

☑ **None.** If "None" is checked, the rest of § 4(e) need not be completed.

**§ 4(f) Loan Modification**

☑ **None.** If "None" is checked, the rest of § 4(f) need not be completed.

(1) Debtor shall pursue a loan modification directly with ________________ or its successor in interest or its current servicer ("Mortgage Lender"), in an effort to bring the loan current and resolve the secured arrearage claim.

(2) During the modification application process, Debtor shall make adequate protection payments directly to Mortgage Lender in the amount of ________________ per month, which represents ________________ (***describe basis of adequate protection payment***). Debtor shall remit the adequate protection payments directly to the Mortgage Lender.

(3) If the modification is not approved by ________________ (date), Debtor shall either (A) file an amended Plan to otherwise provide for the allowed claim of the Mortgage Lender; or (B) Mortgage Lender may seek relief from the automatic stay with regard to the collateral and Debtor will not oppose it.

## Part 5: General Unsecured Claims

**§ 5(a) Separately classified allowed unsecured non-priority claims**

☑ **None.** If "None" is checked, the rest of § 5(a) need not be completed.

**§ 5(b) Timely filed unsecured non-priority claims**

***(1)*** Liquidation Test ***(check one box)***

☑ All Debtor(s) property is claimed as exempt.

☐ Debtor(s) has non-exempt property valued at $ ________________ for purposes of § 1325(a)(4) and plan provides for distribution of $ ________________ to allowed priority and unsecured general creditors.

**(2)** Funding: § 5(b) claims to be paid as follows ***(check one box):***

☑ Pro rata

☐ 100%

☐ Other (Describe) ________________________________________________

## Part 6: Executory Contracts & Unexpired Leases

☑ **None.** If "None" is checked, the rest of § 6 need not be completed.

**Part 7: Other Provisions**

**§ 7(a) General principles applicable to the Plan**

(1) Vesting of Property of the Estate ***(check one box)***

☑ Upon confirmation

☐ Upon discharge

(2) Subject to Bankruptcy Rule 3012 and 11 U.S.C. §1322(a)(4), the amount of a creditor's claim listed in its proof of claim controls over any contrary amounts listed in Parts 3, 4 or 5 of the Plan. Debtor shall amend the plan or file an objection should a filed unsecured claim render the Plan unfeasible.

(3) Post-petition contractual payments under § 1322(b)(5) and adequate protection payments under § 1326(a)(1)(B),(C) shall be disbursed to the creditors by the debtor directly. All other disbursements to creditors shall be made by the Trustee.

(4) If Debtor is successful in obtaining a recovery in a personal injury or other litigation in which Debtor is the plaintiff, before the completion of plan payments, any such recovery in excess of any applicable exemption will be paid to the Trustee as a special Plan payment to the extent necessary to pay priority and general unsecured creditors, or as agreed by the Debtor and the Trustee and approved by the court.

**§ 7(b) Affirmative duties on holders of claims secured by a security interest in debtor's principal residence**

(1) Apply the payments received from the Trustee on the pre-petition arrearage, if any, only to such arrearage.

(2) Apply the post-petition monthly mortgage payments made by the Debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.

(3) Treat the pre-petition arrearage as contractually current upon confirmation for the Plan for the sole purpose of precluding the imposition of late payment charges or other default-related fees and services based on the pre-petition default or default(s). Late charges may be assessed on post-petition payments as provided by the terms of the mortgage and note.

(4) If a secured creditor with a security interest in the Debtor's property sent regular statements to the Debtor pre-petition, and the Debtor provides for payments of that claim directly to the creditor in the Plan, the holder of the claims shall resume sending customary monthly statements.

(5) If a secured creditor with a security interest in the Debtor's property provided the Debtor with coupon books for payments prior to the filing of the petition, upon request, the creditor shall forward post-petition coupon book(s) to the Debtor after this case has been filed.

(6) Debtor waives any violation of stay claim arising from the sending of statements and coupon books as set forth above.

**§ 7(c) Sale of Real Property**

☑ **None.** If "None" is checked, the rest of § 7(c) need not be completed.

Case 26-11667-amc Doc 24-1 Filed 10/30/26 Entered 10/30/26 10:55:43 Desc Exhibit Page 38 of 50

## Part 8: Order of Distribution

**The order of distribution of Plan payments will be as follows:**

**Level 1:** Trustee Commissions*
**Level 2:** Domestic Support Obligations
**Level 3:** Adequate Protection Payments
**Level 4:** Debtor's attorney's fees
**Level 5:** Priority claims, pro rata
**Level 6:** Secured claims, pro rata
**Level 7:** Specially classified unsecured claims
**Level 8:** General unsecured claims
**Level 9:** Untimely filed general unsecured non-priority claims to which debtor has not objected

***Percentage fees payable to the standing trustee will be paid at the rate fixed by the United States Trustee not to exceed ten (10) percent. If the Trustee's compensation rate increases resulting in the Plan becoming underfunded, the debtor shall move to modify the Plan to pay the difference.***

## Part 9: Non Standard or Additional Plan Provisions

Under Bankruptcy Rule 3015.1(e), Plan provisions set forth below in Part 9 are effective only if the applicable box in Part 1 of this Plan is checked. Nonstandard or additional plan provisions placed elsewhere in the Plan are void.

☑ **None.** If "None" is checked, the rest of Part 9 need not be completed.

## Part 10: Signatures

By signing below, attorney for Debtor(s) or unrepresented Debtor(s) certifies that this Plan contains no nonstandard or additional provisions other than those in Part 9 of the Plan, and that the Debtor(s) are aware of, and consent to the terms of this Plan.

Date: **10/20/2026**

**/s/ Michael A. Cibik**
Michael A. Cibik
Attorney for Debtor(s)

If Debtor(s) are unrepresented, they must sign below.

Date: ____________________

____________________________________
Abina A. Duncan
Debtor

Date: ____________________

____________________________________
Joint Debtor

# EXHIBIT "E"

SPS SELECT Portfolio SERVICING, inc.

Loan Numbe [redacted]
Preparation Date:09/16/2026
Prepared By: AnishKuma

# MFR Post-Petition Payment History for Filing

| Loan Information | |
|---|---|
| Loan Number | [redacted] |
| Debtors Name - 1 | DUNCAN, ABINA |
| Debtors Name - 2 | - |
| Property Address | 28 PINE STREET |
| Property State | NJ |

| Bankruptcy Information | |
|---|---|
| Bankruptcy Case # | 26-11667 |
| Filing Date | 04/20/2026 |
| Person filing | ABINA DUNCAN |
| Number of previous filings | 2 |

| Post Petition Default Information | |
|---|---|
| Post petition due date | 05/01/2026 |
| Post petition amount due | $13,104.85 |
| Escrow Shortage | $0.00 |
| Suspense | $0.00 |
| Total Post petition due | $13,104.85 |

Post Petition Payment History

| Post Pmt Rcpt | Post Due Dt Pd | Mo $ Due | $ Received | Comments |
|---|---|---|---|---|
| 06/17/2026 | Partial Payment | $0.00 | $2,576.39 | Partial Payment |
| 06/22/2026 | NSF | $0.00 | ($2,576.39) | Non Sufficient Funds |
| 07/14/2026 | Partial Payment | $0.00 | $2,576.39 | Partial Payment |
| 07/16/2026 | NSF | $0.00 | ($2,576.39) | Non Sufficient Funds |
| 07/23/2026 | Partial Payment | $0.00 | $2,576.39 | Partial Payment |
| 07/27/2026 | NSF | $0.00 | ($2,576.39) | Non Sufficient Funds |
| 08/20/2026 | Partial Payment | $0.00 | $2,576.39 | Partial Payment |
| 08/24/2026 | NSF | $0.00 | ($2,576.39) | Non Sufficient Funds |
| 08/31/2026 | Partial Payment | $0.00 | $2,576.39 | Partial Payment |
| 09/03/2026 | NSF | $0.00 | ($2,576.39) | Non Sufficient Funds |
| Due | 05/01/2026 | $2,620.97 | $0.00 | |
| Due | 06/01/2026 | $2,620.97 | $0.00 | |
| Due | 07/01/2026 | $2,620.97 | $0.00 | |
| Due | 08/01/2026 | $2,620.97 | $0.00 | |
| Due | 09/01/2026 | $2,620.97 | $0.00 | |
| **Total Due** | | **$13,104.85** | | **Total Pmts Due** |
| **Total Received** | | | **$0.00** | **$13,104.85** |

# EXHIBIT “F”

# Payoff Calculation Totals (PAY4/PG1)

[redacted] AS-OF 09/16/26 PAYOFF CALCULATION TOTALS 09/15/26 14:27:42
NAME A DUNCAN CONTACT NAME ABINA DUNCAN

| | |
|---|---|
| PRINCIPAL BALANCE | 307,323.70 |
| INTEREST 09/16/26 | 20,239.40 |
| PRO RATA MIP/PMI | .00 |
| ESCROW ADVANCE | 6,531.66 |
| ESCROW BALANCE | .00 |
| SUSPENSE BALANCE | .00 |
| HUD BALANCE | .00 |
| REPLACEMENT RESERVE | .00 |
| RESTRICTED ESCROW | .00 |
| TOTAL-FEES | 135.20 |
| ACCUM LATE CHARGES | .00 |
| ACCUM NSF CHARGES | .00 |
| OTHER FEES DUE | .00 |
| PENALTY INTEREST | .00 |
| FLAT/OTHER PENALTY FEE | .00 |
| CR LIFE/ORIG FEE RBATE | .00 |
| RECOVERABLE BALANCE | 1,830.00 |

---- 1ST MORTGAGE RATE CHANGES ----

| INT FROM | RATE | AMOUNT |
|---|---|---|
| 09/01/25 | 6.49000 | 20,239.40 |
| 09/16/26 | | |

| | |
|---|---|
| TOTAL 1ST MTG INTEREST | 20,239.40 |
| TOTAL TO PAYOFF | 336,059.96 |

NUMBER OF COPIES: 1 PRESS PF1 TO PRINT

| | |
|---|---|
| TOTAL PAGE 2 | .00 |

# EXHIBIT "G"

**Fill in this information to identify your case and this filing:**

Debtor 1: **Abina** (First Name) **A.** (Middle Name) **Duncan** (Last Name)

Debtor 2 (Spouse, if filing): First Name / Middle Name / Last Name

United States Bankruptcy Court for the: **Eastern** District of **Pennsylvania**

Case number

❑ Check if this is an amended filing

# Official Form 106A/B

# Schedule A/B: Property

12/15

**In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

## Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

❑ No. Go to Part 2.
☑ Yes. Where is the property?

1.1 **28 Pine St**
Street address, if available, or other description

**Moorestown, NJ 08057-1033**
City State ZIP Code

County

**What is the property?** Check all that apply.

☑ Single-family home
❑ Duplex or multi-unit building
❑ Condominium or cooperative
❑ Manufactured or mobile home
❑ Land
❑ Investment property
❑ Timeshare
❑ Other

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
❑ Debtor 2 only
❑ Debtor 1 and Debtor 2 only
❑ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $290,160.00 | $290,160.00 |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

**Fee Simple**

❑ **Check if this is community property** (see instructions)

**Other information you wish to add about this item, such as local property identification number:**

**Source of Value:** **Zillow $362,700 less 20% closing costs**

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here** ........ ➔ **$290,160.00**

## Part 2: Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

❑ No
☑ Yes

Debtor **Duncan, Abina A.** Case number *(if known)*

3.1 Make: **Acura**
Model: **TLX 2WD**
Year: **2019**
Approximate mileage: **77800**
Other information:

**Source of Value: KBB Trade-In**

**Who has an interest in the property?** Check one.

- ☑ Debtor 1 only
- ❑ Debtor 2 only
- ❑ Debtor 1 and Debtor 2 only
- ❑ At least one of the debtors and another
- ❑ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| **Current value of the entire property?** | **Current value of the portion you own?** |
|---|---|
| **$13,530.00** | **$13,530.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

- ☑ No
- ❑ Yes

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ........................................................................ ➔ **$13,530.00**

## Part 3: Describe Your Personal and Household Items

**Do you own or have any legal or equitable interest in any of the following items?**

**Current value of the portion you own?** Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**

*Examples:* Major appliances, furniture, linens, china, kitchenware

- ❑ No
- ☑ Yes. Describe. .........

**Various used pieces of furniture, furnishings, appliances, linens, and other similar items, each valued at $600 or less.** **$500.00**

7. **Electronics**

*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

- ❑ No
- ☑ Yes. Describe. .........

**Various used televisions, mobile devices, and computers, each valued at $600 or less.** **$400.00**

8. **Collectibles of value**

*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

- ☑ No
- ❑ Yes. Describe. .........

Case 26-11667 Doc 24-1 Filed 06/30/26 Entered 06/30/26 10:43:19 Desc Exhibit Page 46 of 50

Debtor **Duncan, Abina A.** Case number *(if known)* ____________

9. **Equipment for sports and hobbies**

*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☑ No
☐ Yes. Describe. .........

10. **Firearms**

*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

☑ No
☐ Yes. Describe. .........

11. **Clothes**

*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No
☑ Yes. Describe. .........

| Description | Value |
|---|---|
| **Various used articles of clothing, shoes, and accessories, each valued at $600 or less.** | **$300.00** |

12. **Jewelry**

*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No
☑ Yes. Describe. .........

| Description | Value |
|---|---|
| **Various used pieces of jewelry.** | **$150.00** |

13. **Non-farm animals**

*Examples:* Dogs, cats, birds, horses

☑ No
☐ Yes. Describe. .........

14. **Any other personal and household items you did not already list, including any health aids you did not list**

☑ No
☐ Yes. Give specific information. .............

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ........ ➔ **$1,350.00**

## Part 4: Describe Your Financial Assets

| **Do you own or have any legal or equitable interest in any of the following?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

16. **Cash**

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☑ No
☐ Yes ........ Cash: ..................

Debtor **Duncan, Abina A.** Case number *(if known)*

17. **Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

❑ No
☑ Yes .....................

| | Institution name: | |
|---|---|---|
| 17.1. Checking account: | **Capital One** | **$100.00** |
| 17.2. Checking account: | **SOFI** | **$4,103.00** |
| 17.3. Savings account: | **SOFI** | **$1,553.00** |
| 17.4. Other financial account: | **Cash App** | **$5.00** |
| 17.5. Other financial account: | **Paypal** | **$0.00** |
| 17.6. Other financial account: | **Venmo** | **$0.00** |

18. **Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
❑ Yes .....................

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☑ No
❑ Yes. Give specific information about them...................

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No
❑ Yes. Give specific information about them...................

21. **Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No
❑ Yes. List each account separately.

22. **Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☑ No
❑ Yes .....................

Debtor **Duncan, Abina A.** Case number *(if known)* ______

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No
❑ Yes ....................

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No
❑ Yes ....................

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No
❑ Yes. Give specific information about them. ...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No
❑ Yes. Give specific information about them. ...

27. **Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No
❑ Yes. Give specific information about them. ...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**

☑ No
❑ Yes. Give specific information about them, including whether you already filed the returns and the tax years. ..................

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No
❑ Yes. Give specific information. ........

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

☑ No
❑ Yes. Give specific information. ........

Debtor **Duncan, Abina A.** Case number *(if known)*

31. **Interests in insurance policies**

*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No

❑ Yes. Name the insurance company of each policy and list its value. ...

32. **Any interest in property that is due you from someone who has died**

If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No

❑ Yes. Give specific information. ........

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**

*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No

❑ Yes. Describe each claim. ..............

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No

❑ Yes. Describe each claim. ..............

35. **Any financial assets you did not already list**

☑ No

❑ Yes. Give specific information. ........

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here** ........ ➔ **$5,761.00**

## Part 5: Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**

☑ No. Go to Part 6.

❑ Yes. Go to line 38.

45. **Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here** ........ ➔ **$0.00**

## Part 6: Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.

❑ Yes. Go to line 47.

52. **Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here** ........ ➔ **$0.00**

## Part 7: Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**

*Examples:* Season tickets, country club membership

Debtor **Duncan, Abina A.** Case number *(if known)*

☑ No

☐ Yes. Give specific information. ............

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ........................................................ ➔ **$0.00**

## Part 8: List the Totals of Each Part of this Form

| | | | | |
|---|---|---|---|---|
| 55. | **Part 1: Total real estate, line 2** ........................................ | | ➔ | **$290,160.00** |
| 56. | **Part 2: Total vehicles, line 5** | **$13,530.00** | | |
| 57. | **Part 3: Total personal and household items, line 15** | **$1,350.00** | | |
| 58. | **Part 4: Total financial assets, line 36** | **$5,761.00** | | |
| 59. | **Part 5: Total business-related property, line 45** | **$0.00** | | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | **$0.00** | | |
| 61. | **Part 7: Total other property not listed, line 54** | + **$0.00** | | |
| 62. | **Total personal property.** Add lines 56 through 61. .............. | **$20,641.00** | Copy personal property total ➔ | + **$20,641.00** |
| 63. | **Total of all property on Schedule A/B.** Add line 55 + line 62. ........................................ | | | **$310,801.00** |